IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ERYK MILLER,

    Defendant.

Case Nos. 3:19-cr-00048-AA
6:11-cr-60052-AA

**ORDER ON DEFENDANT'S MOTION FOR 30-DAY TEMPORARY RELEASE**

AIKEN, Judge:

Before the Court is defendant Eryk Miller's Motion for Release from Custody (doc. 46) and Supplemental Motion for Release from Custody (doc. 50).[1] Miller was arrested in January 2019 on a warrant for violating his supervised release in Case No. 6:11-cr-60052-AA. During a search incident to that arrest, officers found evidence that led to Miller's indictment on drug and firearm charges in Case No. 3:19-cr-00048-AA. After a Detention Hearing on February 22, 2019, Magistrate Judge Russo determined that Miller was a flight risk and a danger to the community and ordered that he be detained pending trial under 18 U.S.C. § 3142. Doc. 11. Judge Russo cited several factors which weighed against Miller's release, including the nature of the

---

[1] Unless otherwise noted all record cites are to the docket in Case No. 3:19-cr-00048-AA. Miller filed identical motions at Docs. 96 and 101 in Case No. 6:11-cr-60052-AA.

Page 1 – ORDER

charged offenses; violent behavior; possession of weapons' outstanding warrants; Miller's criminal history, which included drug- and alcohol-related offenses; prior failures to appear; and prior supervision failures. *Id.*

In January 2020, Miller pled guilty to one count of possession with intent to distribute methamphetamine and his combined sentencing and supervised release revocation hearing was set for April 13, 2020. Docs. 40, 41. On April 8, 2020, at Miller's request, the Court vacated that hearing and scheduled a release hearing in its place. Doc. 45. Miller filed his Motion for Temporary Release (doc. 46) on April 10, 2020, and the Government filed its Response (doc. 27) opposing release on April 11, 2020.

The Court held a hearing on the motion on April 13, 2020 and continued the hearing to April 17, 2020.[2] Docs. 48, 51. Both hearings took place telephonically due to federal, state, and court stay-at-home directives in response to the COVID-19 pandemic.[3] At the April 17 hearing, the Court denied Miller's motions for reasons stated on the record and indicated that this formal, written Order would follow.

Miller moves under 18 U.S.C. § 3142(i) for a 30-day temporary release from Sheridan FDC ("the FDC") to the custody his stepmother, Beverly Turner. He asserts that temporary release is necessary to prepare his pre-sentencing defense and that

---

[2] Miller's Supplemental Motion for Release from Custody (doc. 50) was filed April 16, 2020, to address concerns that the Court expressed during the first hearing.

[3] *See e.g.*, "The President's Coronavirus Guidelines for America" (March 16, 2020); Governor Brown's Executive Order 20-12 (March 23, 2020), "Stay Home, Save Lives: Ordering Oregonians to Stay at Home, Closing Specified Retail Business, Requiring Social Distancing Measures for Other Public and Private Facilities, and Imposing Requirements for Outdoor Areas and Licensed Childcare Facilities;" Standing Order 2020-4 (March, 13, 2020), "In Re Court Operations in Response to COVID-19;" Standing Order 2020-9 (April 9, 2020).

Page 2 – ORDER

several circumstances related to the COVID-19 pandemic constitute independent compelling reasons for his release from custody.

The Government disputes § 3142(i)'s applicability in this context. According to the Government, because Miller pled guilty and is awaiting sentencing, rather than trial, 18 U.S.C. § 3143 controls and, therefore, the Court cannot order Miller's release, even temporarily, unless it finds "by clear and convincing evidence" that Miller will not pose a flight risk or danger. 18 U.S.C. § 3143(a); *see also* Fed. R. Crim. P. 46 ("The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal."). The Court need not resolve this dispute here, however, because even applying the more generous standard in § 3142(i), Miller's motion for temporary release fails.4

Section 3142(i) provides, in relevant part:

"[t]he judicial officer may by subsequent order, permit the temporary release of the person, in the custody of the U.S. Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason."

---

4 The court notes that district courts are split on whether § 3142(i) provides independent grounds to temporarily release a defendant who has pled guilty and is awaiting sentencing. *Compare United States v. Boone*, No. 2:16-cr-00020-TLN, 2020 WL 1865202, at *4 (E.D. Cal. Apr. 14, 2020) (considering defendant's arguments for pre-sentencing release under § 3142(i) but concluding that defendant failed to demonstrate compelling reasons) *and United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *3 (E.D. Mich. Mar. 27, 2020) (concluding that § 3142(i) applied even though defendant had pled guilty and was detained pending sentencing); *id.* at *3 n.3 (reasoning that the court need not make a finding that the defendant was not a flight risk or danger because § 3142(i) provides "independent statutory grounds" for release) *with United States v. Gerrans*, No. 18-cr-00310-EMC-1, 2020 WL 1865420 at *2 (N.D. Cal. Apr. 14, 2020) (relying on the text and context of § 3142(i) to reject defendant's argument that the provision applies post-conviction) *and United States v. Paulino*, 19 Cr. 54 (PG), 2020 WL 1847914, at *5 n.3 (S.D. N.Y. Apr. 13, 2020) (collecting cases rejecting or questioning § 3142(i)'s applicability to release pending sentencing).

18 U.S.C. § 3142(i). A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Miller argues that release is necessary for the preparation of his defense. He asserts that the Bureau of Prisons' ("BOP") policies designed to stem the spread of COVID-19 have interfered with his ability to have substantive attorney-client communications about his sentencing and supervised release revocation hearing. BOP has suspended in-person legal visits, except for those approved at the local level on a "case-by-case" basis. Miller's attorney, Mr. Cassino-DuCloux, can schedule telephone or video-conferencing meetings with Miller, but access to the meeting space is limited and the video-conferencing systems often malfunction. The FDC has also opened up its phone lines to allow each inmate one 15-minute call per day. Miller, like many other inmates, often uses that call to talk to Mr. Cassino-DuCloux. But during those calls, they do not engage in privileged communications because they do not want other inmates to know confidential and personal information about Miller and his case. Although Standing Order 2020-10 provides some protection against the waiver of attorney-client privilege under current conditions, it does not ensure that communications are private.

These challenges are common to all inmates at the FDC and, in fact, courts have observed that they are "endemic to confinement during the current pandemic." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *5 (E.D. Mich. Mar. 27, 2020). Section 3142(i) requires a "a particularized finding of necessity," *United*

*States v. Stephenson*, No. 3:20-CR-18-CRS, 2020 WL 1811353, at *3 (W.D. Ky Apr. 8, 2020), after an "individualized analysis of the facts of each case," *United States v. Cox*, ___ F. Supp. 3d ___, 2020 WL 1491180, at *2 (D. Nev. Mar, 27, 2020). And "inconvenience due to confinement is common to all incarcerated defendants and does not justify release." *Buswell*, 2013 WL 210899, at *5. As the Court observed at the April 13 hearing, this is a systemic problem that requires a systemic resolution. Between the two hearings, the Court looked into what the District of Oregon is doing to solve these attorney-client communication issues and learned that the District has assembled an inter-agency working group.

At the same time, those common communication issues have significantly impacted Miller's case. The Court, Government, and Pretrial and Probation Services were all prepared to proceed with Miller's sentencing and revocation hearing on April 13, but the Court vacated that hearing because Miller and Mr. Cassino-DuCloux had not been able to have a substantive communication about the hearing. The Court cannot find that Miller's requested release is "necessary" to prepare for the hearing, which has not been rescheduled. But the Court is committed to working with Miller, his attorney, and the FDC to develop solutions to ensure that Miller's sentencing and revocation hearing is accomplished as soon as possible. As mentioned in the April 17 hearing, the Court will order Miller to be transported to the detention facility in the Eugene courthouse and will work with the Marshals Service to transport and supervise Miller and provide equipment for him to call or video-conference with Mr. Cassino-DuCloux.

Page 5 – ORDER

Miller also argues that three circumstances present "[]other compelling reason[s]" for his release. 18 U.S.C. § 3142(i). Although Miller's reasons could be compelling under some circumstances, they are outweighed by the factors that supported his initial detention order and additional risks posed by his proposed release plan.

First, Miller asserts that the risk of a COVID-19 outbreak at the FDC supports temporary release. But Miller does not have physical characteristics (age, underlying medical conditions) that make him especially vulnerable to the virus. Although temporary release might be warranted under some circumstances notwithstanding the lack of any individualized reason for releasing a particular detainee, many district courts have rejected temporary release motions under § 3142(i) that were based on generalized fears of a hypothetical COVID-19 outbreak. *See United States v. Lee*, No. 19-cr-298, 2020 WL 1541049, *6 (D.D.C. Mar. 30, 2020) (collecting cases).

Second, Miller asserts Ms. Turner needs his support during the pandemic. Because of health issues, Ms. Turner does not drive. Doc. 46 Ex. 3. Her other children work full time and have trouble taking time off work, so they would like Miller's help driving Ms. Turner to doctor's visits and helping her around the house while he is on release. *Id*. Ms. Turner suffers from Chronic Obstructive Pulmonary Disease ("COPD") and an irregular heartbeat. *Id*. She is on oxygen at all times and has experienced several transient ischemic attacks.5 *Id*. As the Court explained to Miller

---

5 A "transient ischemic attack" ("TIA") is sometimes called a "mini-stroke." A TIA occurs when blood flow to the brain is blocked for a short time. https://www.cdc.gov/stroke/types_of_stroke.htm

Page 6 – ORDER

at the April 13 hearing, Ms. Turner's health conditions place her at a very high risk of COVID-19 infection and of severe symptoms and poor health outcomes from an infection. Miller's plan to live with Ms. Turner would increase her risk of infection, and could do so dramatically if Miller did not practice social distancing and other behaviors aimed at preventing the spread of the virus.

Third, Miller asserts that current conditions at the FDC have negatively impact his mental health and substance abuse treatment. The FDC is in a 23-hour lockdown and Miller has not been able to participate in mental health or substance abuse treatment. He also asserts that he has not been receiving psychiatric medication that he needs and has not been able to see a psychiatrist to address that issue. The combination of Miller's lack of access to treatment, anxiety concerning COVID-19 infection, and lockdown conditions have exacerbated Miller's mental health conditions. If Miller is released to Ms. Turner's home, he can receive free, virtual mental health, drug, and alcohol treatment through Linn County's Department of Health. Although Miller's plan may mitigate some of the mental health and treatment issues posed by conditions at the FDC, release will present its own stressors and challenges. It is unlikely that Miller's treatment plans on release will be able to meet his needs, especially because the plans do not address his medication issues. The Court is particularly concerned about Miller's medications and, as stated at the hearing, will order Miller to see a psychiatrist and work with Sheridan to ensure the he receives the medication that he needs while detained.

Page 7 – ORDER

In addition to "compelling reasons," § 3142(i) requires release to the United States Marshals or "another appropriate person." A third-party custodian "must reasonably assure the court that the defendant will appear as required and will not pose a danger to the safety of any other person or the community." *United States v. Ryan*, ___ F. Supp. 3d ___, 2020 WL 1861662, at *2 (C.D. Cal. Apr. 14, 2020) (internal quotations omitted and alterations normalized).

At the April 13 hearing, the Court told Miller that because of Ms. Turner's medical conditions and mobility limitations, the Court could not conclude that she was an "appropriate" custodian for Miller. In his supplemental motion, Miller provided evidence that two other family members who live near Ms. Turner are also willing to help supervise him. Those family members have experience in healthcare and corrections, and the Court has no doubt in the sincerity of their intent to immediately report Miller if he violates the terms of his release.

But Miller has an extensive history of mental illness, substance abuse, and failed supervision. Although he has shown great initiative in seeking and engaging in mental health and substance abuse treatment since his arrest and has made progress while in custody, Miller would require a high level of supervision and support to be successful on release. Given Pretrial and Probation Services limited ability to provide supervision at this time, the bulk of that support and supervision work would fall to Miller's third-party custodian(s). In light of Miller's history, lack of appropriate psychiatric medications, limited plans for mental health and substance abuse treatment during release, and the stressors Miller has faced while at the FDC

Page 8 – ORDER

during the pandemic and would face upon release, the Court cannot conclude that Ms. Turner and her family would be able to provide adequate support and supervision.

Moreover, the stakes here are high. Miller has a history of violence and convictions and allegations involving dangerous conduct. Miller's state court convictions include Attempted Assault II in June 1994 for shooting at sheriff's deputies with a pellet gun; Burglary I in September 1994, involving Miller's theft of a .38 caliber semiautomatic pistol; April 1995 for misdemeanor menacing, involving an incident where Miller swung a claw hammer at his uncle, injuring his uncle's shoulder. Miller has state convictions from 1999 and 2000 for possession of controlled substances and federal convictions possession with intent to distribute from 2011 in Case No. 6:11-cr-60052-AA and, now, 2020 in Case No. 3:19-cr-00048-AA. Miller also has state and federal convictions for felon in possession of a firearm in 1999 and 2004, respectively, and both involved the discovery of loaded firearms. The first conviction was based on the discovery of a loaded 9mm semiautomatic handgun in Miller's vehicle during a traffic stop and the second was based on the discovery of a loaded 9mm pistol in Miller's waistband during a home visit by his state probation officer. During Miller's most recent arrest, Portland police officers found a loaded .45 caliber, semi-automatic Glock 36 pistol in his glove box. That behavior weighed heavily in favor of Miller's detention in 2019 and continues to support this detention now. And any mitigation of Miller's dangerousness that Ms. Turner and her family's

supervision could provide is offset by the increased COVID-19 risks that he poses to them, pretrial and probation, and the community, but to Ms. Turner, in particular.

In sum, the Court cannot conclude that it would be appropriate to release Miller to Ms. Turner's family or that Miller has established that "compelling reasons" require his temporary release under § 3142(i). Accordingly, Miller's Motion for Release from Custody (doc. 46) and Supplemental Motion for Release from Custody (doc. 50) are DENIED.

If Miller would like the Court's assistance in finding alternative means of confidential, attorney-client communications to prepare for his sentencing and supervised release revocation hearings and in ensuring that he receives appropriate psychiatric medications, he should have his attorney contact Cathy Kramer at the Clerk's Office.

IT IS SO ORDERED.

Dated this  24th  day of April 2020.

                                              /s/Ann Aiken
                                               Ann Aiken
                                            U.S. District Judge